# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ROBERT IRELAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 14-1012-JWL** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding error in the Commissioner's determination that Plaintiff "does not have a medically determinable impairment of cognitive disorder or impairment" (R. 21), the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

## I.    Background

Plaintiff applied for SSD and SSI, alleging disability beginning June 11, 2012.  (R. 20, 93-94).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  He claims the Administrative Law Judge (ALJ) erred in evaluating his cognitive impairment at step two of the Commissioner's five-step sequential evaluation process, and for that reason, substantial evidence does not support the ALJ's residual functional capacity (RFC) assessment.

Review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not

2

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  <u>Williams</u>, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  <u>Id.</u>

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of

3

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ erroneously determined at step two that Plaintiff's cognitive impairment is not a medically determinable impairment.  Because a proper evaluation of Plaintiff's cognitive impairment will necessarily require another RFC assessment, the court will not consider Plaintiff's further argument that substantial evidence does not support the ALJ's RFC assessment.  He may make any argument he desires in that regard on remand.

## II.    Step Two Evaluation

Plaintiff argues that the ALJ did not evaluate Plaintiff's cognitive impairment properly at step two, and erred in failing to find that impairment is "severe" within the meaning of the Act.  He recognizes in accordance with Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008) and Hill v. Astrue, 289 F. App'x. 289, 291-292, (10th Cir. 2008) that where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  (Pl. Br. 11) (citing Brescia, 287 F. App'x at

4

628-29).  The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining plaintiff's RFC, considers the effects "of <u>all</u> of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" <u>Id.</u>, (quoting <u>Hill</u> 289 F. App'x at 291-92).

Plaintiff argues that the medical evidence demonstrates that Plaintiff's cognitive impairment is "severe" (Pl. Br. 12-15),  and that "[i]n essence, the ALJ found that [Mr.] Ireland's cognitive impairment was not even a medically determinable impairment."  (Pl. Br. 10).  He argues that the failure to find Plaintiff's cognitive impairment is "severe" was prejudicial to Plaintiff and was not harmless because it tainted the ALJ's evaluation of the medical opinions.  <u>Id.</u> at 15.  The Commissioner argues that the real issue "is whether the ALJ reasonably accounted for Plaintiff's limitations, including any cognitive impairment, in his residual functional capacity finding."  (Comm'r Br. 3) (citing <u>Carpenter v. Astrue,</u> 537 F.3d 1264, 1266 (10th Cir. 2008)).  She then explains how that, in her view, the ALJ sufficiently explained the mental limitations assessed, and how those limitations properly account for Plaintiff's cognitive impairment.  (Comm'r Br. 3-6).  In his Reply Brief, Plaintiff argues that the Commissioner's argument (that the mental limitations assessed by the ALJ account for Plaintiff's cognitive impairment) is without merit because "the ALJ unequivocally concluded that Ireland's cognitive impairment was <u>not</u> a medically determinable impairment," and that he was, therefore, prohibited from including restrictions based upon that alleged impairment.  (Reply 1-2) (emphasis in original).  The court agrees with the plaintiff.

5

**A.**     **The ALJ's Findings**

At step two, the ALJ found that Plaintiff has severe impairments including sarcoidosis, headaches, depression, anxiety, and substance abuse disorder.  (R. 22).  The ALJ found that Plaintiff also has a cognitive linguistic impairment and hypertension which are medically determinable impairments but which are not "severe" impairments within the meaning of the Act.  (R. 23).  The ALJ discussed the diagnosis of cognitive impairment or cognitive disorder opined by certain of Plaintiff's treatment providers:

> The record reflects that some treatment providers have listed a diagnosis of cognitive impairment among the claimant's diagnoses (See e.g. Exhibit 15F, p.7 [(R. 348)]).  However, this diagnosis seems to be based primarily on the claimant's and his wife's statements, as there is no objective testing that establishes a definitive diagnosis of cognitive disorder.  In addition, during an April 2013 psychiatric evaluation, the claimant exhibited intact concentration and average intelligence and was given a Global Assessment of Functioning (GAF) score of 60 (Exhibit 21F, p.4 [(R. 385)]).  Further, one treatment provider described the claimant's alleged cognitive disorder as "mild" (Exhibit 13F, p.11 [(R. 318)]).  Overall, due to the absence of objective testing and findings of intact concentration and average intelligence on mental status examination, the undersigned finds that the claimant does not have a medically determinable impairment of cognitive disorder or impairment.

(R. 23).

With regard to Plaintiff's medically determinable mental impairments, the ALJ applied the Commissioner's psychiatric review technique and determined that although those mental impairments are "severe" within the meaning of the Act, no Listing is met or equaled because Plaintiff has only mild restrictions in activities of daily living; moderate difficulties in social functioning, or in concentration, persistence, or pace; and no

episodes of decompensation, and because the "paragraph C" criteria of the mental

Listings are not met or equaled.  (R. 24-25).

The ALJ's discussion of his RFC assessment occurs at pages 6 through 11 of his

decision.  (R. 25-30).  In that assessment, the ALJ discussed evidence regarding

Plaintiff's mental impairments, but in almost every case he related that evidence only to

the impairments of anxiety and depression.  (R. 27) (discussing limited mental health

treatment with regard to anxiety and depression); (R. 28) (noting that Plaintiff's

allegations of disabling anxiety and depression are not supported by the record as a

whole); (R. 29) (according "no weight" to Dr. Allen's opinions regarding mental

limitations and discussing only depression and anxiety as the related diagnoses).  The one

exception in this regard is the ALJ's evaluation of the opinion of Dr. Veloor who

examined Plaintiff and opined that he has difficulty holding gainful employment.  (R. 30).

In that evaluation, the ALJ noted Dr. Veloor's diagnosis of cognitive impairment and

discounted it because it was "based upon the claimant's history and not [Dr. Veloor's]

examination, as it contains no documented cognitive testing," and because the diagnosis

is not supported by the neuropsychological examination.  (R. 30) (citing Exs. 21F, 22F).

### B.   Analysis

The ALJ's determination that cognitive disorder is not medically determinable in

this case is based primarily on the health care providers' reliance on the statements of

Plaintiff and his wife, and the ALJ's belief that there is "no objective testing that

establishes a <u>definitive</u> diagnosis of cognitive disorder."  (R. 23) (emphasis added).
However, neither the record nor the law will support these findings.

With regard to objective testing, the record reveals that a Speech-Language Pathologist, Ms. Leonard, performed a Montreal Cognitive Assessment of Plaintiff, who scored 23 of 30 on the assessment, suggesting mild cognitive impairment.  (R. 377); see also, http://www.mocatest.org/normative_data.asp, (Revealing that the MOCA score range for mild cognitive impairment is 19.0-25.2) (last visited Dec. 12, 2014).  Ms. Leonard also noted that Plaintiff only performed with 60% accuracy on auditory recall tasks.  <u>Id.</u>

A neurologist, Dr. Martinez, examined Plaintiff and found:  "Memory is 1/3 after 5 minutes.  . . . unable to do serial 7's, unable to spell world backwards correctly.  Language is slow.  Fund of knowledge is decreased."  (R. 380).  Dr. Martinez's assessment included:  "He does have a cognitive impairment.  Unknown as to if this is pseudodementia. . . . Memory decline may be secondary to his chronic intake of alcohol though."  <u>Id.</u>

On his neuropsychological exam, Dr. Heredia noted:

Speech was of decreased rate, decreased volume and increased latency, informative and coherent. . . .  Concentration is intact.  The patient was able to spell world backwards "d-l-r-o-w," but took 2-3 minutes to appropriately answer.  Memory is fair in all realms--immediate, recent and remote.  The patient was only able to recall 1 out of 3 objects, but with prompting was able to recall 2 out of 3 objects within 5 minutes.  Abstractions are intact.  Similarities are intact.  Fund of knowledge is good.  Estimate of intellectual functioning is average.  Thought processes are goal directed.

(R. 385).  As the ALJ noted, Dr. Heredia's neuropsychological exam included a GAF

score of 60.  Id.  But, it also included a diagnosis of "Cognitive Disorder NOS."  Id.  Dr.

Veloor noted the results of her neurological examination:

> He was alert, oriented to self and place, but he could not recall the date, but
> was able to remember the month and the year with a bit of hesitation.  He
> does take a little bit of time with the memory task.  He needed some cues
> for immediate recall and recall of 3 words at 5 minutes.

(R. 389).  She also diagnosed cognitive deficits.  Id.

The diagnoses of cognitive impairment discussed above were clearly based on

objective testing.  At the very least, the Montreal Cognitive Assessment is an objective

test.  Moreover, although the mental status examination performed by Ms. Leonard, Dr.

Martinez, Dr. Heredia, and Dr. Veloor is not necessarily a written instrument with

normative tables, it is "objective medical evidence" within the meaning of the Social

Security regulations.  The regulations define  "objective medical evidence" as "medical

signs and laboratory findings as defined in § 404.1528 (b) and (c) [§ 416.928 (b) and

(c)]."  20 C.F.R. §§ 404.1529(a), 416.929(a).  As is relevant here, the regulations explain

that "[p]sychiatric signs are medically demonstrable phenomena that indicate specific

psychological abnormalities, e.g. abnormalities of behavior, mood, thought, memory,

orientation, development, or perception.  They must also be shown by observable facts

that can be medically described and evaluated."  20 C.F.R. §§ 404.1528(b), 416.928(b)

(emphasis added).  The mental status examinations performed by the healthcare providers

in this case are objective evidence consisting of precisely the type of psychiatric signs

contemplated by the regulations, and were in each case based on observed facts that were medically described and evaluated by each healthcare provider.  This precise point was the first holding relied upon by the Tenth Circuit long ago in the case of <u>Luna v. Bowen</u>, 834 F.2d 161, 162 (10th Cir. 1987).  It was error for the ALJ to find that the diagnoses of cognitive disorder were based primarily on statements of symptoms by Plaintiff and his wife and that there was no objective testing to establish that diagnosis.

To the extent that the ALJ relied upon the lack of a test that would establish a <u>definitive</u> diagnosis, the ALJ did not cite, and the court is not aware of any requirement that all diagnoses be established by a definitive objective test.  Many medical diagnoses are based upon a differential diagnosis whereby a diagnosis is determined by a process of elimination.  <u>I.e.</u>, <u>Sarchet v. Chater</u>, 78 F.3d 305, 306 (7th Cir. 1996).  Diagnosis of a medical condition is a skill which is within the expertise of a physician or a psychologist.  For this reason, the regulations require that evidence from an "acceptable medical source" is the only basis whereby a medically determinable impairment may be established.  20 C.F.R. §§ 404.1513(a), 416.913(a).  Neither the court nor an ALJ may substitute his lay opinion for that of a medical doctor or psychologist.

The evidence offered by the ALJ which is allegedly contrary to the diagnoses of cognitive disorder fairs no better.  The psychiatric evaluation which reported intact concentration and average intelligence and assigned Plaintiff a GAF score of 60 was that of Dr. Heredia, who also reported decreased rate and increased latency of speech, reported that it took 2-3 minutes for Plaintiff to spell world backwards, and that Plaintiff

10

was only able to recall 1 out of 3 objects, and <u>with prompting</u> was able to recall 2 out of 3 objects within 5 minutes.  (R. 385).  Moreover, despite finding intact concentration and average intelligence, and assigning Plaintiff a GAF score of 60, Dr. Heredia also diagnosed Plaintiff with "Cognitive Disorder NOS."  (R. 385).  The ALJ apparently agreed with some of Dr. Heredia's observations, ignored others (or at least did not discuss them), and came to a different conclusion than did Dr. Heredia.

The ALJ also relied upon the fact that Dr. Welch "described the claimant's alleged cognitive disorder as "mild" in finding that cognitive disorder is not medically determinable on this record.  (R. 23).  However, Dr. Welch stated his "Impression" as "Mild cognitive impairment secondary to chronic alcoholism."  (R. 318) (bolding omitted).  That Dr. Welch found mild cognitive impairment might be a basis to find that the impairment is not "severe" within the meaning of the Act, but his diagnosis of mild cognitive impairment can by no stretch of the imagination be construed to support a finding that cognitive impairment is <u>not medically determinable</u> because Dr. Welch in fact made a medical determination that Plaintiff has a mild cognitive impairment.

"In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*."  <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation omitted; emphasis in original).  The ALJ here rejected the medical diagnoses of four physicians, Drs. Welch, Martinez, Heredia, and Veloor on

11

the basis of his evaluation of the alleged absence of objective testing and the findings of intact concentration and average intelligence, and on his apparent determination that such findings would preclude the diagnosis of cognitive impairment or disorder.  The court can reach no other conclusion than that the ALJ substituted his lay opinion for the medical opinions of these physicians.  That is error.

The court is aware that it is the ALJ's responsibility to resolve conflicts in the medical evidence or the medical opinions.  But here there is simply no conflicting evidence or opinion regarding this issue in the record.  As Plaintiff pointed out "[t]here are no non-examining, State agency opinions in the record."  (Pl. Br. 15).  Moreover, neither the ALJ nor the Commissioner has pointed out, and the court has not found, any such contradictory evidence.

As Plaintiff points out, this error is not harmless.  Limitations attributed to impairments which are medically determinable but are not severe <u>must be</u> considered at later steps in the evaluation, but limitations attributable to impairments which are <u>not</u> medically determinable <u>must not be</u> considered.  20 C.F.R. §§ 404.1508, 404.1523; <u>see also</u>, <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 554, n.7 (3d Cir. 2005) (to be considered, an impairment must be medically determinable, but need not be "severe"); <u>Gibbons v. Barnhart</u>, 85 F. App'x 88, 91 (10th Cir. 2003) ("ALJ must consider only limitations and restrictions attributable to medically determinable impairments.") (quotation omitted).

Because the ALJ found Plaintiff's cognitive impairment not medically determinable he could not consider that alleged impairment in assessing RFC limitations

for Plaintiff.  Moreover, a review of the decision reveals that he <u>did not</u> consider that impairment in his RFC assessment.  Rather, in assessing mental limitations for Plaintiff, he considered only the impairments of anxiety and depression.  (R. 27-29).  The only mention of cognitive disorder in the portion of the decision where he assessed RFC was in his evaluation of Dr. Veloor's opinion.  (R. 30).  In this evaluation, the ALJ discussed Dr. Veloor's diagnosis of cognitive impairment and explained that he gave "no weight" to that diagnosis, and he did not assess any RFC limitations based on that consideration.

Despite the Commissioner's argument that the ALJ reasonably accounted for Plaintiff's mental limitations, the analysis above reveals that the ALJ was required to and did specifically ignore any limitations resulting from Plaintiff's cognitive impairments in assessing RFC.  Therefore, remand is necessary for a proper evaluation of this impairment and consideration of the additional limitations, if any, resulting from it.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 16th  day of December 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum\
**John W. Lungstrum**\
**United States District Judge**

13